Clerk, please call the next case. 209-1256, Gene May v. Town. Good morning. May it please the Court, Counsel. My name is Mike Russin. I'm here on behalf of the employer, Gene May. I'm here before you to seek reversal of the Commission's 2-1 majority decision, and I am asking you to adopt the dissenting opinion and reverse the award of compensation. I would submit to you that the facts presented in this case are not really disputed. What's in dispute, really, are the conclusions and the speculations as set forth in part in the arbitrator's decision and especially in the Commission's decision. The facts are that on June 19, 2001, the claimant was employed as an installer for a heating and air conditioning company. His job was based out of a shop in Sugar Grove, which is a suburb just west of Aurora, a little southwest of Aurora. And he would report to the shop in the morning. He would work an eight-hour day, and he would finish his work at the shop. On the date of this accident, he came to work. He drove a truck. He drove his truck to the job – when I say his truck, his employer's truck – to the job site. And at 11.15 a.m. approximately, he was asked to go to a supply store to pick up supplies. The supply store is named Connor. It's located in Aurora. In terms of location, it was about four miles southwest of the job. Four miles southwest of the job. He went to pick up the part. We know he picked up the part. He did not come back to the job site. At approximately 12.39 p.m., so about an hour and 20 minutes, hour 25 minutes after he left, he was involved in a motor vehicle collision, and he was seriously injured. I would submit to you that the motor vehicle collision was not compensable. It did not arise out of, and it was not in the course of his employment. Why is that? Several reasons. You know I'm familiar with some of the issues involving arising out of and in the course of. Are there some cases that you argued before this tribunal? Some of them. I've had some discussions with some of them. A picture sometimes says more than I do. Respondents exhibit one, and you'll find it in two pages because that's the way it fits in the record. The job site is right here. That's one. It's sort of in the center of the map, fortunately. The place that he went to pick up the parts is two, southwest, southwest. The only place that he was permitted to go was to the shop and back, and the testimony is clear and he didn't really dispute it. The accident occurs at three. The accident is northeast of the job site. So it is not reasonable, it is not foreseeable that he would have deviated so far from the route, from the job site to the shop and back. And when you say the shop, you're talking about where, not his home shop, but where he was going to pick up the part. Correct. Although the shop itself is very close to the supply store. That's going to be my next question. Out of curiosity, where was his home shop? Same area? Pretty much over there. Sugar Grove is over there. And it was not in the direction that he was traveling. It is not. All right, so what are we talking about here? You're talking about, you're arguing that he deviated. Yes. His deviation was a personal deviation that removed him from the scope of employment. That's what I'm getting from your. Yes, sir. He's in the wrong area. Yes, sir. Is there some indication that there were some restaurants in the area where he was heading? He could have been going to lunch. It was the lunch time. Actually, there is no indication of that, but that is my opponent's argument. There's actually no testimony that that's what he was doing. If you reach that conclusion, it would have to be based on speculation. First, because there's no evidence of it. And secondly, because the evidence is contrary for several reasons. First, the only person who testified about lunch was the employer supervisor, Todd May. And he said, you know, employees were allowed to use the truck for lunch with permission. On this day, the claimant hadn't asked for permission. He needs permission to ask to go to lunch? To use the truck. He doesn't need permission to ask to go to lunch. He needs permission to use the truck to go to lunch. Using the truck to go to lunch was personal. Personal was not allowed. Wait a minute. Was there testimony that on a daily basis he had to ask permission to use the truck to stop and get lunch? To go to get lunch, yes. Even though he's driving the company truck, a company business, over the lunch hour, he's got to call in to get permission to go to lunch with the truck? Yes. And, in fact, in this case, in this specific case, Todd May testified the claimant called him while he was on the road and asked if he needed him to stop. I shouldn't use pronouns. Todd May said the claimant called and said, do you need anything else? And I'm paraphrasing. And Todd May said, no, come back to the job site. So there's never a request made. So he's not entitled to just go to lunch. He's got to get permission every day to take a lunch? To use the truck to go to lunch, yes. That is the testimony of Todd May, and there's no contrary testimony from Petitioner. There is dispute as to how long the lunch hour is. The claimant thought it was a half an hour to an hour, and Todd May and the owner said it was a half an hour. And let me tell you why the allegation that he was going someplace for lunch is specious. We don't know. He doesn't remember what happened. Is that right? He was there a couple days before, so we don't know why. No testimony from the claimant that he was trying to go to lunch. What we do know is if he was going to lunch, the place that he made the pickup from is right here. The petitioner's argument is that maybe he was going to lunch on Route 59 out here, because that's where fast food restaurants are. The reason I say that's specious is he was on Route 31. Route 31 has more fast food restaurants than Route 59. Why would he not go to McDonald's on Route 31, where there's a ton of restaurants, all the way on the way back to the job site, as opposed to on 59, which is five miles past where it was? So you're saying the mere fact that he's in a different area that you wouldn't anticipate would be the proper route takes him out. He's on some unauthorized frolic. What about the testimony of the owner, Beverly May? She testified she never knew claimant to use the vehicle for personal business. He had never previously been disciplined for improper use of the vehicle. He was a good worker. All of his records indicate that he never had ever done anything outside the scope of his employment. Is that in the record? That's a little bit more than what she said, but she did not report any prior deviations. She did report this is the only day that his fiancé's father died. So what does that mean? In terms of where he was going, I can tell you why, but I'd be forced to speculate because it's not in the record. You don't want to because you're saying he's speculating and that's improper. And I don't want to do that. And if you're forced in reviewing this case to speculate as to what he's doing, then you've got to find the case not compensable based on the fact there are a series of cases, and I know Justice Hoffman can tell me which ones they are because he remembers the names better than I do, that say minor deviations. And you just came out with a case, Cox. You said it's a minor deviation. They're on the way home. They take a deviation of a few hundred feet. They're on the way coming back. That's compensable. That's a minor deviation. This is not a minor deviation because I will tell you, and this is undisputed because of the police report, not only was he five miles, no, that's not true, four and a half miles out of the way, but he was going in the opposite direction. And you have to combine the deviation with the speed. And if I was to sit here and tell you the man was going fast and therefore the case is incompensable, I would lose. But that is a factor that you ought to consider. It's a factor set forth in the case decisions. Just going fast doesn't take you out of your employment. Right. We know that. But here he's going really fast. It's a 25 mile an hour zone. He's going somewhere between 55 to 70, passing a truck, slams into the back of another truck, going in the opposite direction from a reasonable way back to where his employment is located. So who has the burden to prove? I suppose I should say who has the burden of going forward with the evidence vis-à-vis a deviation? Does the employee have the burden of going forward with evidence that he's not deviating, or does the employer have the burden of going forward with evidence that he is? That's an excellent question. I believe the employee has the burden of proving his case. And if the employee is in a position where it is clear, absolutely clear, that he has deviated, then he has the burden of proof of showing that the deviation was either insubstantial or the deviation was allowed. Because some of the cases, when you went through the Cox case, I happened to look at some of the sites, the other case you cited, in the Robinson case, the employer appeared and testified and said, well, personal use of the truck was allowed. So even if the claimant was doing something personal, that's okay. So if the claimant has the burden of proving his case, then the claimant has the burden of going forward. If the claimant deviates from that location where he is supposed to be, then he has the obligation to prove that it was either allowed, it was permitted, or the deviation was insubstantial. Because it's for those reasons that you found cases like this compensable. Now, my research has not shown a case like this, where you've got both gross excessive speed and substantial deviation. Well, does it really rest on that, or does it rest on the fact that he simply doesn't know what he was doing and has introduced no evidence as to what he was doing, and therefore, it's pure speculation on both sides, meaning he doesn't prove his case? Yes. That's correct. If both parties are forced to speculate, the claimant cannot succeed because he has the burden of proof. It is not Respondent's burden of proof to show why he deviated. Can the Commission infer from all of the evidence whether or not there was a substantial deviation? You have a case here, as you said, that it could never be established definitively because the claimant has no memory, his memory loss. So does he automatically lose them because there's a memory loss? No, he doesn't automatically lose because there's a memory loss. Well, how else would you prove then that there was not a substantial deviation if he doesn't remember what he was doing over there and for what purpose? He could present other witnesses. To establish what? What he was doing at the time. How would the other witnesses know? I would suggest to you that his fiancé knows what he was doing at the time. He was going to lunch with him? Correct. Okay. You know, the claimant has the burden of proof. The claimant also has the opportunity to call whatever witnesses he has, especially in a case of deviation, to show that the deviation was somehow related to his employment or to give some explanation as to why he was where he was at. So what you're saying is memory loss is not an excuse for failure to present evidence? Correct. Okay. There was some indication he might have been lost. Was that pure speculation? It seemed like the commission had a phrase from the police report or claimed that something was in the police report you disputed. That was, yes. The arbitrator's decision said it was possible that the claimant was lost. That was pure speculation on her part. The commission majority corrected the arbitrator's error because the arbitrator made reference to the police report. The police report is Respondent's Exhibit 2, and it's very detailed because there were actually a number of witnesses to this occurrence. And there's absolutely nothing in the police report to say that the claimant was lost. So the commission majority in their decision said the arbitrator's decision was wrong on that issue. Yet we still are going to find that the case is compensable. Thank you. Counsel, please. Thank you. Good morning, gentlemen. May it please the Court, Counsel, is there anything in particular you want me to address? Yeah. Why isn't it speculation? Why isn't it speculation? Where's the evidence that he wasn't deviated? Right. The way I'm looking at this, this is my first involvement with the case, too. So I'm looking at the record. Keep your voice up, please. I'm looking at the record alone without knowing what happened behind the scenes and what other witnesses were out there. Counsel tells you, I believe he said, that the fiancé knows what he was doing at the time that he was going to eat with him. I didn't see any evidence that the fiancé had any involvement in any kind of a lunch break with the petitioner in this case. What we have is a complete lack of evidence as to any aspects of the deviation. So we're speculating that there was a personal errand involved. That's pure speculation. So I don't know how the case can be denied on that ground. I don't have a record, but we have physical evidence of the location of the job site, the location of the store, and the location of the accident. So we have that. Right. And we also have testimony by the employer and employer agents, officers, that there is a procedure to follow to use a vehicle for personal use or lunch. We also have testimony that he was told, no, we don't need anything else. Come back to the job site. And then we have four and a half miles away in the opposite direction with the vehicle heading away from the job site. That's it. So we do have evidence. Sure. Here's why this all fits together, though, from a compensability standpoint. We have an employee who was sent on a specific errand to pick up a particular piece of equipment. We know that he got to the location to pick up the piece of equipment. We know that he had the piece of equipment in the vehicle at the time of the accident. We have absolutely no evidence that he was heading out to Route 59 to buy any food at a restaurant. We have absolutely no evidence he was on a personal errand of any sort. And as I recall, I think Ms. May actually looked through the truck after the accident. There's nothing in the truck indicating that he was doing anything untoward or personal that she found in the vehicle. There was no evidence that he had any kind of intoxicating device or anything in his system. Any evidence that he had had lunch already, any bags or anything? Nothing. Nothing. There was no evidence that there was any bags in the vehicle at all. If you look at the map, and I don't have the map in front of me, but as I recall looking at it, he is heading the opposite direction from the job site that the company was that he picked up the piece of equipment. Well, if you look, there's a bridge right south of the Connelly Company. He crosses over that, comes up, gets onto the road that would take him either to the job site or where he had the accident. If he didn't know where he was, he makes a right and he goes the wrong way. I mean, that is a very logical conclusion, and that's, I think, the conclusion that the arbitrator drew from the case. The commission said, well, there's no evidence specifically of that in the police report, so what they did was they rested the case on the five simple facts that he was operating the company vehicle, he wasn't told how to operate the company vehicle, he wasn't given a specific route to take to or from the Connelly Company to pick up this piece of equipment. He was sent specifically to pick up the piece of equipment he had at the time of the accident, and the foreman didn't tell him what time parameter he had to make this trip to come back. What about counsel's argument? It seemed a little bit strange to me that he had to call in to a supervisor and specifically give permission to have lunch. That wasn't my understanding from the record. I thought when I read the record that it was, if you have the vehicle, as long as you get lunch in a local area, local job vicinity area, you're fine. You just got to get back to work and finish the job. That was my understanding. It wasn't my understanding that if you're out chasing equipment for the company, you have an obligation to call in and, can I take an additional trip here to get some lunch? I don't think that's in the record. In fact, if I'm not mistaken, and you'll know this better than I, I'm pretty sure that I saw Mr. Presbury asking Mr. May whether or not they discussed whether he could go get some lunch during the phone conversation they had where he said come back to the job site. And I thought the guy said, I don't remember whether we discussed lunch, something to that effect. So if that's the case, we really have no evidence that the guy's going for lunch or that lunch was even discussed. So your position is it's not a substantial deviation because he was not instructed to take a certain route? Exactly. And he was heading back in the direction of the job site when the accident occurred? The only thing I can conclude is that he was trying to get back to the job site. That's all we know. Was the direction he was heading at the time of the accident, was it, would have been bringing him back to the job site? I think he was going the opposite direction. Yeah, but that's why I think he's lost because there's no other explanation for it. I mean, he's a good worker. Everybody says he's a good worker. He has no infractions. They've never had a problem with him. He has his accent. He can't remember anything. It's awful. But he's speeding. You know, apparently he's, you know, if I'm lost, I know I'm in a hurry to get wherever I need to go. If I've been told I have to get back to work. It seems like it makes sense that the guy's in a hurry to get back to his job. He doesn't know where the heck he is. And, you know, he may be a little bit distracted by that fact and, you know, the accident occurs. So my thought on it. He's got the part in the trip, but they can't complete the job until he does get back. That's exactly right. He has, he's doing exactly, all we know is that he's on this trip to get this part, and he's still in the context of this trip. I'm going to ask the commission, because now we're speculating too. What does the commission really say? Well, I think they rested on five points. He was operating the company vehicle at the time of the accident. Two, the foreman told him to pick up the condenser. Three, the employer didn't dictate his route. Four, the foreman thought he would return in about 45 minutes, but he didn't put a deadline on his return. And number five, he had the condenser and was transporting it at the time of the accident. There's no evidence that he was deviating in any respect. Plus, there's no evidence from any witness that the location of the accident was outside the general vicinity of the job site. Well, what he was really doing, to get back to the very basics of what the comp law is, is that there's nothing there that says he's not in the scope of his employment. You're exactly right. It's a very bare-bones presentation. I think the deviation argument is a pure red herring. I mean in the course of, to people who are more accurate. In the course of, yes. It turns out that just those facts alone, it's reasonable to infer he's in the course of his employment. Sure. And I think the deviation argument, I think that is like an affirmative defense. I think it's really the Respondent's obligation. It's based on the physical location only. That's exactly what it is. That's it. So if somebody gets lost, they lose the right to compensability. Right. And it was foreseeable because you saw Mr. May testify that, oh, of course, people get lost. I get lost. I mean, I don't know if anyone's made the argument that because he got lost, it's not compensable. The question is, was he lost? What was he? He was moving in a direction opposite of where he was supposed to be. Was he on a frolic? Was he lost? Nobody knows. So the question becomes, who failed in their burden? Him? Or did the burden belong to the Respondent to go forward with evidence to show that he was on some type of a frolic? I think we put on the per se bare bones case. And if they want to establish a defense saying we frolicged or we detoured or we deviated, they've got to show with evidence that's admissible and compensable. Well, the arbitrator says that there's a presumption. And I can't find a case that says there is. A presumption of compensability? No, the presumption that he wasn't in a frolic. Arbitrator says that he presumed he wasn't in a frolic. Yeah, I was looking at the industrial commission. There is a presumption. Well, I was looking at the industrial commission reversal, or actually they modified the arbitrator's decision. So I was just reading off the panel of commissioners' decision and whether or not that was against the manifest way of the evidence. Again, I think it's a manifest way call. I don't know that it's a legal call. And assuming that's the case, there is evidence to support the industrial commission's decision in this case. And it's not so far outside the realm of possibility or probability that it should be reversed on a manifest way standard. Have we lost the case at the lower levels? I don't know how we could get it reversed. Well, first of all, you seem to be saying that in essence is where is there a deviation? Yeah, the employee has to prove that the deviation, there was a reason for the deviation, but you were raising the fundamental question, where is there evidence of a deviation? Exactly. Because you're saying that the company has acknowledged there was no specific routes he had to go to just get back to the job site. So in the absence of evidence, where is the establishment of a deviation in the first place? I suppose he could have been taking the Grand Circle, right? Theoretically. I mean, there is a Portillo's right over there. I go Portillo's over McDonald's. But see, there you're speculating again. Yeah, you're right. I apologize. No, you're right. Everybody's going down rabbit holes here. You're right. Get back to the basics. You're right. So it's bare bones, and I ask that you affirm it on a manifest way standard. Thank you. Thank you. Thank you. Yes, ma'am. Arbitrator says it was your burden to introduce evidence of the deviation. Is that true? Well, she was wrong. Arbitrator finds that insufficient evidence was presented that would rebut the presumption that Petitioner was in fact performing a task on behalf of a respondent. Time for the evidence. Whence comes the presumption? The presumption comes from a misapprehension of the law by the arbitrator, because there is no such presumption in either the statute or in any case law that's been generated by the courts. Well, how does this arise? We have acknowledged, and I think you're correct on the fact, that once this deviation issue is brought forth, that the person's acting outside the scope of employment, then the employee would have to come back. But whose burden is it to raise it initially? Again, that's what I asked earlier, the fact that the geography would support that he's not in a direct route of travel back to the job site. Does that then raise the presumption, the opposite presumption, that there's a deviation that the employee has to rebut? That seems to be what you're suggesting. Actually, I'm not suggesting that. My argument is really that the claimant has the burden of proof, and he has not sustained his burden of proof. The burden of proof, though, you've got to tie it to what issue? On the issue? Does he have to prove that he was not deviating? He does. Or do you have to start out raising the issue affirmatively, then the claimant has to rebut it? How does this move procedurally? Well, procedurally, he has to prove that he sustained an accident arising out of the course of the course. Which he clearly did. Well, actually, he didn't. He said, you know, I was at work that day, and I don't know what happened at the time of the accident. Well, he's got a part. He's, you know, he did do what he was initially assigned task. The question is, what was he doing on the way back? That's true. And, you know, you are forced to make a conclusion. And to make a conclusion, you have to make some inferences. And pretty much what my opponent has argued is that you really have no evidence. And one of the conclusions you can reach is he was lost. And, you know, the evidence is this is a man who grew up in the area. He's worked for the company for a year. And on a daily basis, virtually, he goes and makes a pickup at this location. So to make the conclusion or the inference that. Well, see, now you're getting to some evidence that's relevant. Is there evidence in the record that he's gone to that place more and more than one occasion? Daily. Daily he goes to Conner, a wholesaler, to pick up supplies. This is the primary supplier for this company. Right. And he's worked there for a year. Okay. And all their work is in this geographic location. And if you had another question, I just wanted to cite to the record because, you know, again, you've got to go back to the record for the evidence. And the evidence on lunch and the evidence on use of the truck is contained in pages 58 to 61. And the only thing that I would say, this is a question that specifically was asked and Todd may specifically answer. And. The question was asked. Lunch and distance. The question was asked, you have to get permission to go to lunch and use the truck. And the answer on page 62, I was off by a page, sorry. Right. They would have to request or, you know, tell somebody they were going to lunch and it would be within a, you know, like in that area where there were restaurants, within a quarter mile that would have been or less. And that's the only evidence in the record is direct testimony, not five miles away over a half an hour to go to whatever restaurant. This isn't based on a written rule or anything. This is just him testifying. This is him testifying. But, but it's the only evidence in the record on the issue. He at any time conveyed that rule to the claimant. He said they had lunch almost every day. Because he and the claimant, he said, were friends. This is the son of the owner. So he had lunch with him. With the claimant. Yes. Thank you, Counsel. Thank you, judges. Court will take the matter under advisement for disposition.